IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY DUNN, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | |
| HAMRA ENTERPRISES and HAMRA MANAGEMENT COMPANY, LLC, | ) ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Timothy Dunn, by and through his attorneys, Pedersen & Weinstein LLP, for his Complaint against Defendants, Hamra Enterprises and Hamra Management Company, LLC, states as follows:

## NATURE OF ACTION

1. Plaintiff brings this action to challenge Defendants' unlawful retaliation against him in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"). Plaintiff also asserts a claim for retaliatory discharge under Illinois law.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state law claims is based on 28 U.S.C. § 1367.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) as all or part of the cause of action arose in the Northern District of Illinois.

## PARTIES

4. Timothy Dunn ("Plaintiff") is a former employee of Hamra Enterprises and

Hamra Management Company, LLC. He began his employment in 2001 and his employment was terminated on May 14, 2020.

5. Defendant Hamra Enterprises is a franchisee of restaurants including Wendy's, Panera Bread, Noodles & Company, and a Holiday Inn Express & Suites. Headquartered in Springfield, Missouri, Hamra Enterprises operates nine companies with over 7,000 employees in nine states.

6. Defendant Hamra Management Company, LLC is a subsidiary of Hamra Enterprises.

7. Hamra Enterprises and Hamra Management Company, LLC (collectively "Defendants" or "Hamra") each controlled the terms and conditions of Plaintiff's employment and were his employers, both jointly and individually.

8. Defendants are covered enterprises under the FLSA.

## FACTUAL ALLEGATIONS

*Background*

9. Plaintiff was a dedicated and loyal employee of Hamra for nearly 19 years. In his role as Regional Director of Facilities, Plaintiff was responsible for the maintenance and upkeep of Defendants' facilities in the suburban Chicago area. Plaintiff had a staff of six people who reported to him, including an administrative assistant, a warehouse technician and four field technicians. Defendants routinely praised Plaintiff's leadership and hard work.

10. Throughout his employment, Plaintiff discharged all duties assigned to him competently and enjoyed an excellent reputation with regard to the high quality of his work and his conscientious devotion to his job. To be sure, for the last three years, Defendants gave Plaintiff the highest rating, far exceeds performance expectations, in every category rated.

*Plaintiff's Performance During Health Crisis Caused By Coronavirus*

11. Consistent with his years of outstanding performance, in March 2020, Plaintiff stepped up to face the challenges presented by COVID-19. More specifically, Plaintiff and his team worked long hours to prepare Defendants' restaurants for the changes necessitated by the health crisis.

12. In or around mid-March, Ben Kaplan ("Kaplan"), Vice President of Real Estate and Development and Plaintiff's direct supervisor, instructed Plaintiff to have his team prepare its Panera Bread restaurants for outdoor dining and to install signs and banners urgently needed to draw attention to the stores and boost sales. During the normal course of business, the task of preparing the stores for outdoor dining takes close to 3 weeks, but Kaplan required Plaintiff and his team to do it over a weekend.

13. Plaintiff explained to Kaplan that this amount of work in such a condensed time frame would require overtime and objected to having his team work for free. Kaplan resisted paying overtime wages and claimed the workers would be given comp time instead at a later date and insisted they must do the work to keep their jobs. Plaintiff and his team had no choice but to complete the work as instructed, with each of the hourly employees working overtime without pay.

14. In mid-April, Plaintiff learned that Hamra had received a Paycheck Protection Program ("PPP") loan from the U.S. Small Business Administration. The PPP program was designed to help small businesses pay their workers, so with this influx of money, Plaintiff again asked Hamra to pay the hourly technicians the overtime they were owed under the FLSA and Illinois Minimum Wage Law ("IMWL"); Hamra refused.

3

15. In a further effort to address this issue, Plaintiff put his concerns in a written complaint to Kaplan on May 7, 2020. Plaintiff also spoke with Sonja Breuer ("Breuer"), Director of Human Resources, about his complaint on May 8, 2020 and during that call Plaintiff informed her that he had tracked all of the overtime his team had worked since March. Plaintiff sent that information to Breuer on May 11, 2020.

16. Three days following this written report about the unpaid wages, Plaintiff was fired.

17. Given Hamara's refusal to pay overtime wages it unquestionably owed and the abrupt termination of Plaintiff's employment on the heels of him putting his complaint about the unpaid wages in writing, it is clear Hamra fired him in retaliation for protesting Hamra's unlawful conduct, in violation of the anti-retaliation provisions of the FLSA.

18. As further retaliation, Hamra also fired Plaintiff's son, who was one of the technicians required to work overtime without pay.

19. Hamra claimed the terminations of Plaintiff and his son both resulted from a restructuring of the maintenance department and the elimination of Plaintiff's position, but this explanation is pretext. Shortly after Plaintiff and his son were fired, Plaintiff learned that Hamra was seeking to replace his son with a new technician.

20. Further, to the extent Hamra truly decided to eliminate the position of a Regional Director, the selection of Plaintiff over the other Regional Director who had not complained about Hamra's unlawful conduct was plainly retaliatory. Plaintiff was far more qualified and experienced with Hamra's brands and had more seniority than the employee retained.

*Plaintiff Was Fired In Violation Of Clear Mandates Of Public Policy*

21. In addition to raising his concerns over unpaid overtime, Plaintiff also detailed his

4

concerns in his May 7, 2020 complaint to human resources with the fact that he and his team were being required to work in unsafe conditions.

22. More specifically, Hamra required Plaintiff and his team to relocate from a large warehouse to a vacant storefront in Carpentersville, Illinois where there was no restroom or sink where they could wash their hands. If the employees needed to use the washroom, they were required to go to the Panera next door, where the General Manager had tested positive for COVID-19. Plaintiff expressed his concerns over the potential health risks, which were exacerbated by the fact that this Panera store was not closed for deep cleaning and sanitation, despite the confirmed coronavirus diagnosis of the manager.

23. In retaliation for voicing his concerns and attempting to protect the health and safety of employees, Hamra fired Plaintiff, giving rise to claims for retaliatory discharge in violation of Illinois law.

***Plaintiff Suffered Damages***

24. Plaintiff has lost wages, compensation and benefits as a result of Defendants' unlawful conduct.

25. Plaintiff has also incurred attorneys' fees and costs as a result of Defendants' unlawful conduct.

***Liquidated And Punitive Damages***

26. Defendants acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of liquidated and punitive damages.

## COUNT I

**RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**

27. Plaintiff realleges paragraphs 1 through 26 and incorporates them by reference into Count I of this Complaint.

28. 29 U.S.C. § 215(a)(3) makes it unlawful for an employer to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under the FLSA.

29. Plaintiff complained to Defendants about violations of the FLSA.

30. Defendants retaliated against Plaintiff because of his complaints about the violations of the FLSA. By its conduct, Defendants subjected Plaintiff to unlawful retaliation in violation of the FLSA.

## COUNT II

**RETALIATORY DISCHARGE IN
VIOLATION OF ILLINOIS LAW**

31. Plaintiff realleges paragraphs 1 through 30 and incorporates them by reference into Count II of this Complaint.

32. At all material times it was the clear mandate of the public policy of the State of Illinois that employees report violations of the IMWL. Indeed under the IMWL it is a Class B misdemeanor for an employer to retaliate against an employee because that employee has made a complaint about the employer's violations of the IMWL. 820 ILCS 820 105/11(c).

33. At all material times, it was the clear mandate of the public policy of the State of Illinois to protect its citizens from unsafe workplaces and to provide a workplace free of known health and safety hazards, including COVID 19. This policy is enunciated, among other places, in the Occupational Safety and Health Act and regulations promulgated thereunder.

34. The mandate of public policy for protecting the public from COVID 19 is also enunciated in guidelines and regulations promulgated by the Centers for Disease Control and Prevention (CDC), including guidelines for cleaning and disinfecting areas used by an employee with COVID 19. These publications also include handwashing guidelines, including direction to wash hands often with soap and water for at least 20 seconds or to use hand sanitizer with at least 60% alcohol if soap and water are not available. The CDC also states employers should tell employees that if their hands are visibly dirty, they should use soap and water over hand sanitizer. See Interim Guidance for Businesses and Employers Responding to Coronavirus Disease 2019 (COVID-19), May 2020.

35. It is a further clear mandate of public policy that employees who have concerns over working in unsafe workplaces be allowed to raise their concerns with their employers without fear of retaliation. Indeed, 29 U.S.C. § 660(c)(1) provides: "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by [OSHA]."

36. Plaintiff had a good faith belief that Defendants' conduct in failing to pay its employees overtime violated the IMWL.

37. Plaintiff believed, in good faith, that Defendants' requirement that he and his team work in a facility with no place to wash their hands and that they use facilities not properly disinfected after a manager was diagnosed with COVID-19 violated OSHA, CDC and other guidelines and regulations.

38. Defendants retaliated against Plaintiff for reporting his concerns over pay

7

violations and unsafe work conditions by terminating his employment.

39. The discharge violates clear mandates of public policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against the Defendants as follows:

a. Declare that the acts and conduct of Defendants violate the FLSA and Illinois common law;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendants' unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

d. Award Plaintiff liquidated damages;

e. Award Plaintiff prejudgment interest;

f. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

g. Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: July 23, 2020

Respectfully submitted,

By: _/s/Jill Weinstein_

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
33 N. Dearborn Street, Suite 1170
Chicago, IL  60602
(312) 322-0710
(312) 322-0717 (facsimile)